IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HEALTHPLEX ASSOCIATES, INC., a Pennsylvania Corporation, | ) ) ) | 4:06CV3284 |
| Plaintiff, | ) ) ) | **MEMORANDUM AND ORDER** |
| v. | ) ) | |
| MADONNA REHABILITATION HOSPITAL, a Nebraska Nonprofit Corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

The plaintiff, Healthplex Associates, Inc. ("Healthplex"), contracted to provide management services to the defendant, Madonna Rehabilitation Hospital ("Madonna"), for the startup and operation of a wellness center commencing on April 1, 2005. Healthplex claims that Madonna wrongfully terminated the management agreement effective July 1, 2006, for the center's failure to meet net income projections. Madonna responds that it had the right to terminate the agreement, and has counterclaimed. The matter is now before the court on a motion for partial summary judgment, filed by Healthplex, seeking a determination that Madonna is liable for breach of contract.

Healthplex argues that Madonna's termination of the management agreement was a breach of contract for three reasons: (1) the provision allowing termination due to poor financial performance (section 2.5 of the agreement) could not be invoked until the new center was open for at least five months; (2) the agreement required Madonna to consider the center's monthly profitability, instead of its year-to-date profitability, in reaching the termination decision; and (3) Madonna was required to give Healthplex a 30-day "right to cure" notice under section 2.1 of the agreement. I find against Healthplex on each of these contentions.

## I. BACKGROUND

Upon careful review of the record, I find that the following material facts, as set forth in Healthplex's supporting brief,[1] are not in dispute:

Healthplex and Madonna entered into a written contract (the "Management Agreement") a copy of which is attached as Exhibit 1 to the Complaint.

Under the Management Agreement, Healthplex was to provide certain management functions for a wellness center owned and operated by Madonna (the "Center/Club").

Section 2 of the Management Agreement provides:

> 2. Term and Termination. This Agreement shall commence on 4-1-05 and shall continue in full force and effect for a period of five (5) years from the date that the Wellness Center opens.
>
> 2.1 This Agreement may be terminated for cause, as defined below, upon thirty (30) days prior written notice, provided, however, that the notified party shall have the same thirty (30) day period in which to cure the defect which gave rise to the notice of termination; provided further, however, that if the cause giving rise to the right to termination is not a payment

---

[1] Our local rules require a party moving for summary judgment to set forth in its supporting brief "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). "The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. . . . Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." NECivR 56.1(b)(1) (emphasis in original). Madonna, while offering additional material facts, states that it "does not dispute any of the factual statements set forth in Healthplex's Statement of Undisputed Facts." (Defendant's brief (filing 41), at CM/ECF p. 3.)

default and cannot reasonably be cured within thirty (30) days, and the responsible party is diligently pursuing a cure, then the thirty (30) day cure period shall be extended for such period of time as is reasonably necessary to cure. "Cause" for termination shall mean:

    2.1.1 failure on the part of either party to keep, observe or perform any material covenant agreement, term or provision of this Agreement; or,

    2.1.2 closure and cessation of the operations of Owner as a result of Owner's actions or inactions or the actions of governmental agencies or departments; provided, however, that if the Wellness Center is sold or Owner merges or consolidates with another entity or undergoes any corporate restructuring which would result in Wellness Center ownership by any party other than the Owner, such action shall not constitute "Cause" for termination if this Agreement is assigned to the new owner for the then remaining balance of the Term or if Owner terminates this Agreement pursuant to, and pays the amounts due under, Section 2.4 hereof.

    2.2   This Agreement may be immediately terminated by either party upon either party's application for or consent to the appointment of a receiver, trustee or liquidator of all or a substantial part of its assets; filing a voluntary petition in bankruptcy; general assignment for the benefit of creditors; filing a petition or answer seeking reorganization or protection from creditors; exercise of rights with respect to an insolvency law; or, entry of an order, judgment or decree by a court of competent jurisdiction on the application of a creditor or otherwise, adjudicating the party bankrupt or insolvent or approving a petition seeking reorganization of the party or of all or substantially all of its assets.

    2.3   This Agreement may be terminated immediately by either party if the other party is or becomes listed on the Office of Inspector General for the Department of Health and Human Services' Cumulative Sanctions list or a Federal debarment list,

or is convicted of a crime involving reimbursement for or the provision of health care services.

   2.4   In the event of the occurrence of any of the following events: (1) a sale or other transfer of the Wellness Center; or (2) the merger or consolidation of the Owner; or (3) the sale or transfer of a majority of the Owner's stock or units, or (4) the Wellness Center ceases to be operated as a health and fitness center, the Owner may terminate this Agreement on ninety (90) days written notice provided that Owner pays to HPA, at the time of consummation of an event set forth above, a termination fee equal to an amount calculated by multiplying the base monthly fee by a total of twelve months from the date of such ninety (90) day written notice.

      2.4.1  This Section 2.4 shall survive termination of this Agreement for any reason.

   2.5   Owner may terminate this agreement if the Wellness Center's net income is below its forecasted annual budget by more than 30% for a period of 5 consecutive months or more.  In addition, should this occur, the parties agree that they may opt to renegotiate the fees under 5.3.1 and 5.3.2, infra, as an alternative.

   2.6   In the event of termination of this Agreement for any reason, and except for those provisions which, by their terms, survive termination hereof, neither party shall have any further obligation to perform under this Agreement; provided, however, that HPA shall be entitled to receive payment for all management services delivered and not paid for up to and including the termination date. This Section 2.4 and 2.6 shall survive termination of this Agreement for any reason.

The Center/Club was opened at its permanent site on Stephanie Lane, Lincoln, Nebraska, on or about January 27, 2006.

Prior to the Center/Club's opening, Madonna was engaged in pre-membership sales to individuals who joined the Center/Club prior and paid an assessment fee prior to the opening. Initially, Madonna

believed it could take those fees into income at the time the fees were paid and prior to the opening. Madonna determined that individuals that signed up prior to the opening could decide at the time of opening not to join the Center/Club and Madonna would refund the fees they had previously paid. This meant from an accounting standpoint that Madonna could not record the fees as revenue until after the Center/Club opened at the end of January 2006 and meant that Healthplex could not meet the budgeted revenue for January without recording those fees as revenue in January.

Certain office supplies (Account 3410), general supplies (Account 3510) and miscellaneous equipment (Account 4410) which Madonna purchased prior to the Center/Club's opening were not expensed by Madonna until February, after the Center/Club had opened.

By letter dated June 26, 2006, Madonna terminated the Management Agreement effective July 1, 2006.

Madonna's sole reason for terminating the Management Agreement was Madonna's determination that such termination was authorized by subsection 2.5 of the Management Agreement.

Madonna relied upon financial information from the months of January, February, March, April and May of 2006 to justify the termination under subsection 2.5 of the Management Agreement asserting that the financial information for those months established that the Center/Club's net income was below the forecasted budget by more than 30% for a period of "5 consecutive months or more."

Madonna relied upon the "year-to-date" cumulative financial information at the end of each month from January through May 2006 to justify the termination under subsection 2.5 of the Management Agreement asserting that the "year-to-date" financial information for those months established that the Center/Club's net income was below the forecasted budget by more than 30% for a period of "5 consecutive months or more."

Had Madonna looked at each individual month's financial totals from January through May 2006 instead of looking at the "year-to-date" totals

at the end of each of those months, Madonna would not have been able to terminate the Management Agreement under subsection 2.5 of the agreement because the net income for February was only 12% below the budget and was not more than 30% below the budget. Similarly, the net income for April was only 13% below the budget.

Madonna did not provide Healthplex with 30 days notice or an opportunity to cure prior to Madonna's termination of the Management Agreement, and Healthplex's first notice of the termination was the letter dated June 26, 2006.

(Plaintiff's brief (filing 36), at CM/ECF pp. 2-6 (paragraph numbering and citations to record omitted).)

## II. DISCUSSION

This diversity action is governed by state substantive law. *See Bores v. Domino's Pizza, LLC*, 530 F.3d 671, 674 (8th Cir. 2008) (breach-of-contract action); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The management agreement specifies that Nebraska law applies. (Complaint, Ex. 1 (filing 1-2), at CM/ECF p. 16.)

"The meaning of a contract and whether a contract is ambiguous are questions of law." *Pavers, Inc v. Board of Regents of University of Nebraska*, 755 N.W.2d 400, 403 (Neb. 2008). "A court interpreting a contract must first determine as a matter of law whether the contract is ambiguous." *Kluver v. Deaver*, 714 N.W.2d 1, 5 (Neb. 2006). "A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." *Id.* "When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them." *Thrower v. Anson*, 752 N.W.2d 555, 561 (Neb. 2008). "A court's primary concern in interpreting a contract is ascertaining the true intent of the parties." *Coral Production Corp. v. Central Resources, Inc.*, 730 N.W.2d 357, 369 (Neb. 2007).

### A. Applicability of Section 2.5

The first interpretive issue presented by Healthplex's motion is whether the termination provision that Madonna invoked, section 2.5, was intended to apply prior to the expiration of five full months from the opening date of the wellness center. While Healthplex argues that "[i]t simply does not make sense to use financial data prior to the opening date to analyze whether or not Healthplex was meeting the required net income margin" (filing 36, at CM/ECF p. 8), section 2.5 unambiguously provides that Madonna had the right to terminate the agreement "if the Wellness Center's net income [was] below its forecasted annual budget by more than 30% for a period of 5 consecutive months or more." The provision does not state that the 5-month period had to start after the opening date of the wellness center, as opposed to the management agreement's operative date of April 1, 2005.[2] "While [Healthplex] may, in retrospect, be dissatisfied with the bargained-for provision it entered into, [the court] will not rewrite the contract to provide terms contrary to those which are expressed." *Berens and Tate, P.C. v. Iron Mountain Information Management, Inc., 747 N.W.2d 383, 389 (Neb. 2008)*. "Nor is it the province of a court to rewrite a contract to reflect the court's view of a fair bargain." *Id.*

### B. Meaning of Section 2.5

The next issue presented is whether section 2.5 requires for termination that the net income be 30% below budget for each month of the 5-month period, or whether cumulative (or "year-to-date") figures were intended to be used. Again, I find no ambiguity in the agreement. Section 2.5 clearly states that net income must be 30%

---

[2] Madonna argues, as an alternative position, that even if financial data for January 2006 is excluded, it still had the right to terminate the agreement effective July 1, 2006, since this was more than 5 months after the center's opening date of January 27, 2006. That is to say, Madonna argues that the financial situation did not improve during June 2006. I do not decide this issue, but note that Madonna has stipulated that it relied upon financial information for the first 5 months of 2006 to justify the termination.

below budget "for <u>a period of</u> 5 consecutive months or more." (Emphasis supplied.) It is the center's cumulative profit during the 5-month period, not its incremental profit during each month in that time period, that must be examined.

### C.  Applicability of Section 2.1

Third, and finally, Healthplex argues that Madonna's termination of the management agreement under section 2.5 was for "cause," such that a 30-day notice and an opportunity to cure had to be provided under section 2.1. This argument is contrary to the express language of section 2.1, which defines "cause" as a material breach by either party or the cessation of Madonna's operations. Madonna did not terminate the management agreement because of a material breach of contract by Healthplex (although it is now counterclaiming on this basis, and also alleging that it was fraudulently induced to enter into the management agreement). The agreement was terminated solely because the wellness center's profitability was less than had been expected.

### III.  CONCLUSION

Madonna did not breach the management agreement for any of the reasons claimed by Healthplex. Accordingly,

IT IS ORDERED that the plaintiff's motion for partial summary judgment (filing 35) is denied.

October 30, 2008.                    BY THE COURT:

                                     s/ *Richard G. Kopf*
                                     United States District Judge